**IMG-032**                                                     NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4560
_____

TIANDI JIANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A071-961-011)
Immigration Judge: Margaret Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 11, 2011

Before:  RENDELL, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: January 12, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM

Tiandi Jiang ("Jiang") petitions for review of the Board of Immigration Appeals'

final order of removal.  For the reasons that follow, we will deny the petition for review.

Jiang, a native and citizen of China, entered the United States on August 14, 1991,

presenting a fraudulent Japanese passport and requesting admission under the Visa

Waiver Program ("VWP") pursuant to Immigration & Naturalization Act ("INA") § 217(a)(2), 8 U.S.C. § 1187(a)(2).[1]  He was paroled into the United States, and, on August 26, 1991, filed an application for asylum, withholding of removal, and for protection under the Convention Against Torture.  The Department of Homeland Security referred the asylum application to an Immigration Judge, and Jiang then filed a supplemental application, in which he claimed that he feared persecution in China because of his opposition to China's population control policies.

A merits hearing was held on June 17, 2008.  Jiang and his ex-wife Jinju testified.[2] They were married in 1981, and, on December 24, 1982, she gave birth to their first child.  On April 14, 1986, Jinju gave birth to their second child.  Soon thereafter, Jinju was sterilized involuntarily.  Later when the couple registered their second child, they were fined for the "illegal birth."  Jiang came to the United States 5 years later. Numerous articles and items concerning population control activities in Fujian Province were admitted into evidence, as well as medical records documenting that Jinju had undergone a complete bilateral tubal ligation.

On June 25, 2008, the IJ denied relief.  She found Jiang credible but concluded that he could not base his claim for asylum on his wife's involuntary sterilization.  Jiang

---

[1] The VWP authorizes the Attorney General to waive the entry document requirements for qualifying nationals of certain countries who are seeking temporary admission to the United States as nonimmigrant visitors.  See INA § 217(a), 8 U.S.C. § 1187(a); 8 C.F.R. §§ 217.1 et seq.

[2] The date the couple divorced is not clear from the record.  Jinju is now a lawful permanent resident of the United States.  A.R. 229.

had to demonstrate a well-founded fear of persecution based on his own fear of being persecuted, and there was no evidence showing that he suffered persecution in the past on account of resistance to China's population control policies. The IJ emphasized that Jiang did not protest or resist his wife's sterilization or the fine he received after he registered his youngest child in their household registry, and he complied with all of the Family Planning Office's penalties. In addition, there was no evidence that he would be persecuted in the future. Having determined that Jiang failed to satisfy the lower burden of proof for asylum, the IJ further determined that he failed to qualify for withholding of removal. Jiang also failed to demonstrate that it was more likely than not that he would be tortured in China. The IJ ordered Jiang's removal to China.

Jiang appealed to the Board of Immigration Appeals and also filed a motion to remand so that he might pursue adjustment of status based on a relative petition (Form I-130) filed by his United States citizen daughter. In a decision dated November 19, 2009, the Board dismissed the appeal and denied a remand. In pertinent part, the Board determined that the IJ correctly denied Jiang's claim for asylum because he failed to establish that *he* was persecuted for resisting China's coercive population control policy. The Board further held that Jiang did not establish that his fine was an onerous amount or sufficient to constitute economic persecution. Jiang also failed to establish that the fine resulted from his resistance to China's family planning policies. The Board affirmed the IJ's decision denying withholding of removal and CAT protection. With respect to denying the motion to remand, the Board reasoned that, because Jiang requested

3

admission into the United States through the Visa Waiver Program with a fraudulent passport, he was ineligible for adjustment of status.[3]

Jiang has petitioned for review of this decision. In his brief he contends that he sufficiently demonstrated his resistance to China's population control policies, and the Board erred in determining that he failed to establish that he was persecuted on account of his resistance. Moreover, the Board erred in concluding that he failed to establish a well-founded fear of future persecution. Jiang also contends that the Board erred in denying his motion to remand.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). To qualify for asylum or withholding of removal, an applicant must establish that he has a well-founded fear that he will be persecuted if removed to his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b), 1231(b)(3). "[A] person who has a well founded fear that he or she will be forced to [abort a pregnancy or undergo involuntary sterilization] or [is] subject to persecution for [failure, refusal, or resistance to undergo such a procedure] shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

Spouses do not automatically qualify as refugees under the Attorney General's decision in Matter of J-S-, 24 I. & N. Dec. 520 (A.G. 2008) (spouse of person forced to undergo abortion or sterilization is not automatically a refugee under INA § 101(a)(42)).

_____

[3] The government has represented that, on April 8, 2010, Jiang's request for admission under the Visa Waiver Program was "formally refus[ed]." See Respondent's Brief, 6 n.4.

4

Matter of J-S- overruled Matter of S-L-L-, 24 I. & N. Dec. 1 (BIA 2006), and Matter of C-Y-Z-, 21 I. & N. Dec. 915 (BIA 1997). We independently reached the same conclusion in Lin-Zheng v. Att'y Gen. of U.S., 557 F.3d 147 (3d Cir. 2009) (en banc) (overruling Sun Wen Chen v. Att'y Gen. of U.S., 491 F.3d 100, 107-108 (3d Cir. 2007).

Spouses may still establish eligibility for asylum by showing "other resistance," or resistance in their own right. Lin-Zheng, 557 F.3d at 157; Matter of J-S-, 24 I. & N. Dec. at 538. The phrase *other resistance* "covers a wide range of circumstances, including expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law," see Matter of S-L-L-, 24 I. & N. Dec. at 10. See also Matter of M-F-W- & L-G-, 24 I. & N. Dec. 633, 638 (BIA 2008) (removing IUD or failing to attend mandatory gynecological appointment sufficient to show other resistance).

We must uphold the agency's findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We conclude that Jiang's evidence does not compel the conclusion that he exercised resistance to China's population control policies sufficient to qualify him for refugee status. See id. During the administrative proceedings, Jiang argued that a fine imposed by the Chinese government when he registered his second child was onerous. A fine may rise to the level of economic persecution. Li v. Att'y Gen. of U.S., 400 F.3d 157, 168 (3d Cir.

5

2005) (deliberate imposition of severe economic disadvantage which threatens person's life or freedom may constitute persecution). Jiang asserts that the government levied a "huge" fine on him, A.R. 618, but he does not state the amount of the fine or indicate how it threatened his life or freedom, see id. The Board thus correctly determined that Jiang failed to establish that the fine was severe enough to constitute economic persecution.

Further, the Board correctly determined that Jiang failed to establish that the fine was on account of *his* resistance to China's population control policies. The fine was imposed as a result of the birth of his second child, and Jiang himself stated in his affidavit in support of his asylum application that his ex-wife became pregnant when her IUD accidentally became dislodged. A.R. 618. Similarly, Jujin stated in her affidavit that the IUD "got loose." A.R. 229. This unexpected event thus was not the result of Jiang's resistance to China's population control policies.

Accordingly, substantial evidence supports the Board's holding that Jiang failed to establish past persecution. Jiang also failed in his burden to show a well-founded fear of persecution. He paid the fine for the birth of his second child and his wife was sterilized in 1986. There was no evidence that any more harm would befall him in China. See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003) (in absence of evidence of past persecution alien must demonstrate subjective fear of persecution through credible testimony that his fear is genuine and that a reasonable person in his circumstances would fear persecution if returned to his home country). Because Jiang could not meet the asylum standard, he necessarily cannot satisfy the withholding of removal standard. See

6

Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984) (withholding of removal standard requires alien to show by "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). In addition, the record does not compel a conclusion that Jiang met his burden of establishing that it is more likely than not that he will be tortured upon his return to China. See 8 C.F.R. § 1208.16(c)(2).

Regarding the motion to remand, we review the Board's decision for an abuse of discretion. See McAllister v. Att'y Gen. of the U.S., 444 F.3d 178, 185 n.7 (3d Cir. 2006). We have jurisdiction to review this order. Bradley v. Att'y Gen. of the U.S., 603 F.3d 235, 237 n.1 (3d Cir. 2010), petition for cert. filed, 79 U.S.L.W. 3210 (September 20, 2010). Jiang contends in his brief that, although the VWP has a no-contest clause limiting a VWP entrant to contesting removal only through an asylum application, see 8 U.S.C. § 1187(b)(2), those who enter the United States under the VWP nevertheless remain eligible to adjust status through an immediate relative petition pursuant to the Ninth Circuit Court of Appeals' decision in Freeman v. Gonzales, 444 F.3d 1031, 1034 (9th Cir. 2006) (included in the class of non-immigrants who may petition for adjustment of status are VWP entrants, but only those who seek adjustment pursuant to an immediate relative petition). See Petitioner's Brief, at 17. The government counters that the Immigration & Naturalization Service refused admission to Jiang after finding him inadmissible under INA § 212(a)(6)(c)(i), 8 U.S.C. § 1182(a)(6)(c)(i), as an alien who, by

7

fraud or misrepresenting a material fact seeks to procure admission into the United States. See Respondent's Brief, at 19. Freeman thus does not apply to Jiang because it dealt with an alien who was admitted under the VWP. See id.

We note that the Ninth Circuit subsequently narrowed Freeman to cover only VWP entrants who petition to adjust their status during their lawful 90-day stay, see Bradley, 603 F.3d at 241-42 (citing Momeni v. Chertoff, 521 F.3d 1094, 1097 (9th Cir. 2008)). In Bradley, we joined in this narrower view, holding that an alien was not eligible to apply for adjustment of status after expiration of the 90-day VWP stay, and we noted that this narrower view was shared by six of our other sister Courts of Appeals, see id. at 242 n.7. Jiang's application to adjust status was filed on June 3, 2009, A.R. 12, almost 8 years after he was paroled into the United States. We thus are not persuaded by his argument that the Board abused its discretion in denying his motion to remand.

For the foregoing reasons, we will deny the petition for review.